UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONNECTICUT YANKEE ATOMIC POWER COMPANY, Plaintiff, | ) ) ) | Fed. Cl. No. 04-0085 T<br>Judge Francis M. Allegra |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CONNECTICUT YANKEE'S MOTION TO EXCLUDE PORTIONS OF THE TESTIMONY OF JAMES P. MCGAUGHY, JR.**

Steven A. Kaufman
Ropes & Gray LLP
One International Place
Boston, MA 02110
(617) 951-7000
(617) 951-7050 (facsimile)
steven.kaufman@ropesgray.com

Counsel:

J. Steven Baughman
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
(202) 508-4600
(202) 508-4650 (facsimile)
sbaughman@ropesgray.com

A.L. Spitzer
Levina Wong
Ropes & Gray LLP
One International Place
Boston, MA 02110
(617) 951-7000
(617) 951-7050 (facsimile)
lorry.spitzer@ropesgray.com
levina.wong@ropesgray.com

## TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE ........ 2

ARGUMENT ........ 5

I. MR. MCGAUGHY'S OPINIONS ON "RELATED DOCUMENTS" ARE IMPROPER OPINIONS ON LEGAL QUESTIONS AND SHOULD BE EXCLUDED ........ 6

A. Mr. McGaughy's Opinions on "Related Documents" Attempt to Lay Down an Improper Legal Standard ........ 7

B. Mr. McGaughy's Opinions on "Related Documents" Apply the Wrong Legal Standard ........ 8

C. Mr. McGaughy's Opinions on "Related Documents" Are Not a Matter of Expertise ........ 12

II. MR. MCGAUGHY'S OPINIONS ON "READILY ASCERTAINABLE OR EASILY DETERMINED" SHOULD BE EXCLUDED ........ 13

A. Mr. McGaughy's Opinions on "Readily Ascertainable or Easily Determined" Applies an Unarticulated and Improper Legal Standard ........ 13

B. Mr. McGaughy's Opinions on "Readily Ascertainable or Easily Determined" Are Not a Matter of Expertise ........ 16

III. MR. MCGAUGHY'S OPINIONS ON "NECESSARY" ARE PROPER AND SHOULD BE ALLOWED ........ 19

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Al Ghanim Combined Group Co. v. United States*, 56 Fed. Cl. 502 (2003) ....................5

*Bell Atlantic Corp. v. United States*, 224 F.3d 220 (3d Cir. 2000)......................3, 8, 12

*Christiansen v. City of Tulsa*, 332 F.3d 1270 (10th Cir. 2003) ............................6, 7, 8

*Cook v. Sheriff of Monroe County,* 402 F.3d 1092 (11th Cir. 2005)...........................12

*Cuyahoga Metro. Housing Auth. v. United States*,
60 Fed. Cl. 481 (2004)..........................................................................................17

*Dibella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005) ...............................................6, 7, 8

*Elsayed v. California State Univ.*, 299 F.3d 1053 (9th Cir. 2002)...........................5, 6

*General Elec. Co. v. Joiner*, 522 U.S. 126 (1997) ..................................................12

*Indiana Michigan Power Co.*, 60 Fed. Cl. 639 ..................................................17, 19

*Stearns Co. v. United States*, 34 Fed. Cl. 264 (1995)...............................................6, 7

*United States v. Commonwealth Energy Sys. and Subsidiary Cos.*,
235 F.3d 11 (1st Cir. 2000) ...................................................................3, 8, 12

*United States v. Frazier,* 387 F.3d 1244 (11th Cir. 2004)...............5, 6, 8, 9, 12, 16, 17

*Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544...........................................17

## TAX COURT MEMORANDA

*FLP Group, Inc. v. Commissioner of Internal Revenue*, T.C. Memo 2005-208 .......... 3, 8, 12

*Maine Yankee Atomic Power Co. v. Commissioner of Internal Revenue*, T.C. Memo 2002-176 (2002) .......... 3, 8, 12

## STATUTES

10 C.F.R. 50 .......... 3, 18

42 U.S.C. § 1983 .......... 7

Fed. R. Evid. 701 .......... 17

Fed. R. Evid. 702 .......... 5

Tax Reform Act Section 204(a)(3) .......... 2

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONNECTICUT YANKEE ATOMIC POWER COMPANY, Plaintiff, | ) | Fed. Cl. No. 04-0085 T |
| v. | ) | Judge Francis M. Allegra |
| THE UNITED STATES, Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CONNECTICUT YANKEE'S MOTION TO EXCLUDE PORTIONS OF THE TESTIMONY OF JAMES P. MCGAUGHY, JR.**

Plaintiff Connecticut Yankee Atomic Power Company ("Connecticut Yankee") submits this memorandum in support of its motion to exclude portions of the testimony of James P. McGaughy, who is proffered as an expert witness by the Defendant the United States of America ("United States"). For the reasons set forth below, Connecticut Yankee contends that certain subjects of Mr. McGaughy's testimony are not proper subjects of expert opinion because they do not call for specialized knowledge, experience or training, and the bulk of the remainder of Mr. McGaughy's testimony is not admissible because it rests upon undisclosed and erroneous propositions of law that render it of no assistance to the Court. The only opinion given by Mr. McGaughy that is a proper subject of expert testimony and is based on his expertise is the opinion that the work done by Connecticut Yankee was necessary for the operation of the plant and therefore for the performance of the Power Contract; only that testimony should be admitted into evidence.

## STATEMENT OF THE CASE

Connecticut Yankee seeks recovery for "transition" investment tax credit ("ITC") and related interest in respect of certain nuclear fuel and property additions placed in service between 1987 and 1990.

The ITC was originally enacted in 1962 to provide tax incentives for capital investment. Under the ITC, a taxpayer could offset its tax liability for the year it placed qualifying property in service, in an amount equal to a portion of the cost of such property. As part of the Tax Reform Act of 1986 (the "Tax Reform Act"), Congress repealed the ITC for most taxpayers, effective for property placed in service after December 31, 1985. Congress recognized, however, that an immediate repeal would cause a significant disruption for many businesses that had assumed its continued existence in planning their affairs, and, accordingly, included a number of exceptions that permitted such taxpayers to continue benefiting from the ITC for certain transitional periods. One group of taxpayers entitled to transition ITC under the Act were those who placed in service during the transitional period any property that was "readily identifiable with and necessary to carry out a written supply or service contract . . . which was binding on December 31, 1985." Tax Reform Act Section 204(a)(3).

It is Connecticut Yankee's position that it is entitled to transition ITC for nuclear fuel and other property additions that were placed in service between 1987 and 1990 because the fuel replacements and capital projects were "readily identifiable with and necessary to carry out a written supply or service contract." That is, pursuant to a contract that was binding as of December 31, 1985 (as amended and supplemented, the "Power Contract"), Connecticut Yankee was required to sell the entire capacity and

output of its nuclear power plant (the "Plant") to twelve utilities (the "Sponsors"), and the fuel and other property additions placed in service during the period 1987-1990 were necessary to carry out and readily identifiable with the Power Contract.

Cases construing the transition ITC have held that property placed in service during the transition period is eligible for the ITC only if the kind and amount of the property is readily ascertainable from the supply or service contract that necessitated the property additions or from "related documents," and these cases treat as a matter of statutory interpretation – and thus as a legal question – which documents are "related" to the contract. *See, e.g., United States v. Commonwealth Energy Sys. and Subsidiary Cos.*, 235 F.3d 11, 16 & n.5 (1st Cir. 2000); *Bell Atlantic Corp. v. United States*, 224 F.3d 220, 223 (3d Cir. 2000); *FLP Group, Inc. v. Commissioner of Internal Revenue*, T.C. Memo. 2005-208; *Maine Yankee Atomic Power Co. v. Commissioner of Internal Revenue*, T.C. Memo. 2002-176 (2002). Therefore, in particular, whether the regulations promulgated by the NRC to redress problems identified in the Three Mile Island incident, which are compiled in Appendix R to 10 C.F.R. 50, and whether inspection reports of the NRC (compliance with which are conditions of the operating license of the Connecticut Yankee nuclear power plant) are or are not "related documents" to the Power Contract at issue in this case are questions for the Court to decide as matters of law. Likewise, it is a legal question by what criteria capital projects are or are not "readily identifiable with" a contract or related documents, which question has also been the subject of prior judicial attention as a matter of statutory interpretation. *See, e.g., Commonwealth Energy*, 235 F.3d at 16-17; *Bell Atlantic*, 224 F.3d at 224-225; *FLP*, T.C. Memo. 2005-208; *Maine Yankee*, T.C. Memo. 2002-176.

The bulk of Mr. McGaughy's report is comprised of his opinions on these very legal questions – which documents are "related" to the Connecticut Yankee Power contract, what it means for the kind and amount of property to be "readily ascertainable" from the Power Contract or "related documents," and whether the property claimed by Connecticut Yankee of the ITC is such property. *Inter alia*, he "was asked … [to] make the following determination[]: … For the specific property claimed by [Connecticut Yankee], you should determine whether each item … is readily ascertainable or easily determined from the [power] supply contract and related documents." Exhibit A to Declaration of Steven A. Kaufman ("Kaufman Decl.") at 2.[1] *See also* Exhibit A at 4, 6. He further states in his report, "The question then becomes how these documents relate to the power supply contract and related documents. … My instructions also asked me to review the contract and 'related documents.'" Exhibit A at 3. Mr. McGaughy then concludes, "However, there is no project that is '*readily ascertainable or easily determined from the power supply contract and related documents*.'" Exhibit A at 4 (emphasis in original). Moreover, his opinions on these questions are based entirely on his consultation with colleagues in his consulting business and not at all on prior cases that address them. Exhibit A at 3; Exhibit B at 17, 29-30, 32-33, 37, 39-40. In any event, Mr. McGaughy is not a lawyer. *See* Exhibit A at 1 and Exhibit 2 to Exhibit A.

The only opinion proffered in Mr. McGaughy's report that is not infused with his opinions on these legal questions and is based on Mr. McGaughy's expertise and experience is his opinion that the projects for which Connecticut Yankee claims the ITC

---

1 All citations to "Exhibit __" refer to the respective exhibits to the Kaufman Decl.

were in fact necessary for the operation of the plant and therefore necessary for performance of the Power Contract. All else should be stricken.

## ARGUMENT

Expert testimony is admissible only if it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 ("Rule 702"). *See also Al Ghanim Combined Group Co. v. United States*, 56 Fed. Cl. 502, 512 (2003) (excluding expert testimony that does not "aid the court in its analysis"). Expert opinions setting forth legal conclusions do not assist the trier of fact and are properly excluded. *See, e.g., Elsayed v. California State Univ.*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) ("When an expert undertakes to tell the [trier of fact] what result to reach, this does not *aid* the [trier of fact] in making a decision, but rather attempts to substitute the expert's judgment for the [trier of fact's].") (emphasis in original) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1004) (internal quotations omitted)). "The burden of establishing … helpfulness rests on the proponent of the expert opinion … ." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (stating that "helpfulness" is a distinct basic requirement for admissibility of expert testimony and that "courts must take care not to conflate" the helpfulness requirement with qualification and reliability). Moreover, an "imprecise and unspecific" opinion as to a legal standard is especially unhelpful and should be excluded. *Frazier*, 387 F.3d at 1266 (excluding an "imprecise and unspecific" opinion because would not assist a trier of fact).

It is well settled that expert testimony that states an "opinion as to legal standards" or "legal conclusions drawn by applying the law to the facts" is inadmissible. *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (excluding expert

testimony where the plaintiff's expert offered an opinion that defendants "acted recklessly," which was a legal conclusion). *See also Dibella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) ("[Expert witness] statements embodying legal conclusions exceed[] the permissible scope of opinion testimony under the Federal Rules of Evidence.") (quoting *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988)); *Elsayed*, 299 F.3d at 1066 n.10 ("an expert witness cannot give an opinion as to her legal conclusion, i.e. an opinion on an ultimate issue of law"). Likewise, expert testimony that is based on an "imprecise and unspecific" legal standard is improper and should be stricken. *Frazier*, 387 F.3d at 1266 (excluding testimony where expert could not distinguish for fact finder whether an "expectation" was "a virtual certainty, a strong probability, a possibility more likely than not, or perhaps even just a possibility"). Such testimony does not assist the trier of fact. *Id. See, e.g., Elsayed*, 299 F.3d at 1066 n.10 (noting that an opinion as to a legal conclusion does not aid the fact finder); *Stearns Co. v. United States*, 34 Fed. Cl. 264, 268 (1995) ("interpretation of legal terms … could not be considered helpful, admissible expert testimony").

## I. MR. MCGAUGHY'S OPINIONS ON "RELATED DOCUMENTS" ARE IMPROPER OPINIONS ON LEGAL QUESTIONS AND SHOULD BE EXCLUDED

The portions of Mr. McGauhgy's report and testimony relating to "related documents" should be excluded because they proffer improper opinions on a legal standard, attempt to apply that improper and erroneous legal standard, and, furthermore, are not appropriate subjects for expert testimony.

A. <u>Mr. McGaughy's Opinions on "Related Documents" Attempt to Lay Down an Improper Legal Standard</u>

Federal courts routinely exclude expert testimony that attempts to draw legal conclusions or set legal standards. For example, in *Christiansen*, the plaintiffs appealed the lower court's exclusion of the expert testimony of a psychiatrist. 332 F.3d at 1283. Plaintiffs brought suit against the City of Tulsa for civil rights violations under 42 U.S.C. § 1983. *Id.* at 1274. The Plaintiffs proffered expert testimony that the defendants acted "recklessly." *Id.* at 1283. The Tenth Circuit affirmed the exclusion of such testimony because "whether defendants in this case acted 'recklessly' is a legal conclusion." *Id.* Similarly, the Second Circuit in *Dibella* affirmed the exclusion of an expert's proposed testimony that "draw a legal conclusion by opining that [plaintiff's] actions amounted to extortion." 403 F.3d at 121. The Court of Federal Claims has also cautioned against offering expert testimony that reaches legal conclusions. *Stearns*, 34 Fed. Cl. at 268. In *Stearns*, the court excluded expert testimony that "interpret[ed] significant and contested legal terms, such as 'valid existing rights' and 'compatibility.'" *Id.*

In the instant case, Mr. McGaughy improperly attempts to lay down a legal standard as to what are "related documents" to service or supply contracts under the Tax Reform Act. Throughout his expert report and deposition testimony, Mr. McGaughy attempts to define what are "related documents." Exhibit A at 3-4; Exhibit B at 35-36. Under the working definition Mr. McGaughy used for the term "related documents," he considered them to be "interchange agreements, transmission service agreements, [and scheduling agreements]." Exhibit A at 3-4; Exhibit B at 35-36. He arrived at this definition by consultation with his colleagues in his consulting business and on no other basis; he did not consult judicial opinions on the subject, legislative history of the Tax

Reform Act, or any other authoritative source. Exhibit B at 17, 32-33, 40, 44-46. *See also* Exhibit A at 2.

It is not for Mr. McGaughy to opine as to what the legal standard is as to which documents are "related documents" to the Power Contract. Rather, that role is for the court. *See, e.g., Commonwealth Energy*, 235 F.3d at 16-17; *Bell Atlantic*, 224 F.3d at 224-225; *FLP*, T.C. Memo. 2005-208; *Maine Yankee*, T.C. Memo. 2002-176. Thus, the portions of Mr. McGaughy's report and testimony as to what constitute "related documents" should be excluded.

B. <u>Mr. McGaughy's Opinions on "Related Documents" Apply the Wrong Legal Standard</u>

In addition to his attempt to lay down a legal standard, Mr. McGaughy's opinions as to which documents are "related" to the Power Contract rest on faulty legal standards; therefore, they are all unreliable, and they should be excluded. *See, e.g., Frazier*, 387 F.3d at 1266.

Mr. McGaughy testified that he determined whether a document was "related" to the Power Contract by virtue of whether or not a document fell into one of the three categories of documents identified by his colleagues and himself, namely interchange agreements, transmission service agreements, or scheduling agreements. Exhibit A at 4, Exhibit B at 17, 32-33, 40, 44-46. Mr. McGaughy concluded that because Connecticut Yankee has not produced any interchange agreements, transmission service agreements, or scheduling agreements, there exist no "related documents" to the Power Contract. Exhibit A at 4.

> Q: But now you have determined that in my two piles, in the one pile that has the contract and related documents, there's only one document, the contract itself; correct?

A: That's correct.

Exhibit B at 47-48. This misguided conclusion, that there exist no "related documents" to the Power Contract, is carried over into Mr. McGaughy's discussion of Connecticut Yankee's claims for transition ITC related to nuclear fuel, where he considers only the Power Contract in his analysis. Exhibit A at 5 ("The power supply contract makes little mention of fuel at all.").

Mr. McGaughy also testified that, alternatively, his basis for determining whether a document was "related" to the Power Contract consisted of two steps: (1) determining whether a document "is referred to in the power supply contract as a controlling or an influencing document" and (2) "do[es] [the document] implement the [power supply contract]." Exhibit B at 38-39.

The first step of Mr. McGaughy's secondary "methodology" is unreliable because it is based on an "imprecise and unspecific" legal standard. *Frazier*, 387 F.3d at 1266. Even by his own standard, Mr. McGaughy cannot offer a definite understanding of the phrase "related documents."

> Q. … Tell me what is the basis for your view that these three types of agreements, and only they, are related documents to a power contract?
>
> A. Well, first off, I don't think, and I may have, say that it's only these [three categories of documents]. But in power supply contract, there often is a reference in an interchange agreement describing that, or to the others, or we have some that have a fuel management agreement that talk about how fuel is going to be handled, or talk about how the plant is going to be operated, who's going to operate it, and how decisions are made, and those kinds of things. And they're referred to in the power supply contract. But that's not that case here.
>
> …

Q. Well, is there any document that is related but is not referred to in a power supply contract?

A: I would say generally not.

Q: Well, ever not? …

A: I don't know about even ever.

Exhibit B at 37-38.

The second step of Mr. McGaughy's secondary "methodology" to determine whether a document is "related" is similarly imprecise and unspecific. For example, when questioned to distinguish between the categories of "related documents" that he had identified (interchange agreements, transmission service agreements, and scheduling agreements) and other types of documents that also "implement the [power supply contract]," Mr. McGaughy failed to articulate a definite standard.

Q: …This is a nuclear power plant and has to be licensed to operate; correct?

A: That's correct.

Q: And the license is, therefore related to the power supply contract?

A: Well, I'll answer the question. But you have to have a license, and you have to follow the provisions of it, and that's the law of the land. And just so you know, there is a relationship I guess of some sort, but I wouldn't consider it a related document to this power supply contract.

Q: It's not considered by whom a related document?

A: By me.

Q: And why not? That's what I'm trying to find out.

A: Because it's not related to supplying – it's not integral with supplying the power to the customer.

Q: You can't supply the first watt without a license; correct?

A: That's correct.

Q: So how is it not related to supplying power to customers?

A: I mean you have to have the license to supply power. That's certain. But the license stands by itself as a contract between the – well, it's in the contract. It's a law just like the guys have to obey the speed limit coming to work and, you know, I don't consider the laws in the state of Connecticut to be part of the related document with the power supply contract.

Q: Well, let's see if I can come at it again another way. The license is referred to in the power supply contract, isn't it, in paragraph number four on the second page?

A: Yes, it is.

Q: So, therefore, by your criteria, it is a document related to this document; right?

A: I said there is a relationship. …

…

Q: … A document that is referred to in the power supply contract still is not a related document to the power supply contract because why? Tell me.

A: Well, in terms of the power supply contracts, obeying the law of the land is, you know, something that doesn't even need to be in here. Now there's a relationship to that, and the law, and the constitution, and the common law, but it doesn't have – you know, that's something you've got to do. It's not varying the relationship of the parties involved in the contract, in carrying out the contract. So in that way, I don't consider it a related document to the power supply contract. This is motherhood and apple pie really. You don't need to say that. You've got to do that. …

Exhibit B at 41-44. Mr. McGaughy's secondary methodology fails to explain his distinction between a "relationship" and a "related document."

In order for Mr. McGaughy's opinion to be admissible, it must amount to more than *ipse dixit* on his part. *General Elec. Co. v. Joiner*, 522 U.S. 126, 146 (1997). *See also Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1112 (11th Cir. 2005) (excluding testimony where expert failed to "articulate [] a generally accepted standard ... nor an explanation of how or why he believes [that standard was not met]"). Yet Mr. McGaughy fails to demonstrate that his methodology reliably distinguishes a "related document" from a document that merely has a "relationship" with a power supply contract. His failure to articulate a precise and specific standard is analogous to the failure of the expert in *Frazier* to distinguish whether an "expectation" was "a virtual certainty, a strong probability, a possibility more likely than not, or perhaps even just a possibility." 387 F.3d at 1266. Because Mr. McGaughy's testimony regarding "related documents" attempts to apply his own patently incorrect legal standard and because his standard is not precisely and specifically articulated, the portions of his report and testimony that refer to "related documents" should be excluded.

C. Mr. McGaughy's Opinions on "Related Documents" Are Not a Matter of Expertise

Some of Mr. McGaughy's opinions on "related documents" are legal opinions that should be excluded, and others involve applying an erroneous or unarticulated legal standard to the facts of this case. In either case, not one of his opinions on "related documents" relies on his expertise or experience with nuclear power plants. *See, e.g., Commonwealth Energy*, 235 F.3d at 16-17; *Bell Atlantic*, 224 F.3d at 224-225; *FLP*, T.C. Memo. 2005-208; *Maine Yankee*, T.C. Memo. 2002-176.

In fact, Mr. McGaughy's opinions "do[] little more than tell the jury what result should be reached." *Cook*, 402 F.3d at 1111. Mr. McGaughy's attempt to lay down a

legal standard as to what constituted a "related document" involved "no scientific, technical, or other specialized knowledge." *Id.* Mr. McGaughy is not a lawyer and did not consult any cases to determine his purported legal standard of what constituted a "related document." *See* Exhibit B at 17, 32-33, 40, 44-46; Exhibit A at 2. Moreover, his application of his purported standard offered "nothing beyond the understanding and experience of the average citizen." *Id.* Thus, his opinions on "related documents" should be excluded.

## II. MR. MCGAUGHY'S OPINIONS ON "READILY ASCERTAINABLE OR EASILY DETERMINED" SHOULD BE EXCLUDED

For the same reasons discussed in Sections I (B) and (C), *supra*, Mr. McGaughy's opinions as to which items claimed are "readily ascertainable or easily determined," should be excluded.

### A. Mr. McGaughy's Opinions on "Readily Ascertainable or Easily Determined" Applies an Unarticulated and Improper Legal Standard

Similar to Mr. McGaughy's treatment of "related documents," throughout his report and deposition testimony, Mr. McGaughy employs an unarticulated legal criterion as to what makes a capital addition "readily ascertainable or easily determined" from the Power Contract. Exhibit A at 2, 4-5, 5-6; Exhibit B at 49-52. He reports, "It seems clear that the work required in '87 through '90 was not readily ascertainable on December 31, 1985 from the power supply contract or *from any other 1985 documents, related or non-related*." Exhibit A at 4 (emphasis in original). Again, "*However there is no project that is 'readily ascertainable or easily determined' from the power supply contract and related documents.*" *Id.* (emphasis in original). And yet again, "*There is nothing in the*

*power supply contracts or related documents that made the amount of the property claimed ascertainable.*" *Id.* (emphasis in original). When asked to articulate the criterion by which he determined whether any given project was or was not "readily identifiable with" the Power Contract," he offered different criteria on different occasions, and none bore any sign of advance consideration. Exhibit B at 29-30, 34, 49, 50-51. Mr. McGaughy's testimony confirms that his understanding of the terms "readily identifiable" and "easily determined" were not influenced or guided by case law or Defendant's counsel. Exhibit B 29-30.

In one instance, he states that the terms are "not synonymous," but are "one thought."

> Q: Now did you understand those two phrases, readily ascertainable or easily determined, to be synonymous?
>
> A: No, they're not synonymous.
>
> Q: What's the difference between them in meaning?
>
> A: Well, let me back up. I'm not sure this answers the question, but in my looking at specific items, I would look to see whether it was readily ascertainable or easily determined, and I would consider that as one thought. So now whether – if you want to discuss English, I'll be happy to do that. But that's the way I used it in my preparation of this report.

Exhibit B at 34. In another instance, he states that the criterion was just a "matter of comparing" the language of the Power Contract to a listed item of work. *Id.* at 49. And in yet another instance, he offers a third alternate criterion:

> Q: Okay. Now what did you look for in looking at [the Power Contract and the items of work] to see whether there was or was not the requisite relationship? How would you know from looking at [the Power Contract and the items of work] whether there was or there wasn't?

A: Well, is there anything in the contract or related documents … that specifies in some – with some specificity the installations or purchase of this particular item.

Exhibit B at 50.

Yet, although he cannot articulate a precise and specific standard, Mr. McGaughy states that he applied the same standard to each item or work claimed by Connecticut Yankee.

Q: … What was your working definition of readily ascertainable? When you have this contract and this item of work, how do you know whether they have that relationship of ready ascertainment or not?

A: Okay. I would look at this contract, and I'd say does it say they should have 56 fuel assemblies to install in 1990, and it doesn't say that.

Q: And you do that with each of the items of work?

A: That's correct.

Q: And for easy determination, that is in order to determine whether there was an easy determination from the contract of the item of work, you do the same thing in that, the same comparison?

A: Yes.

Exhibit B at 65-66. *See also* Exhibit A at 4, 6.

Another flaw in this inquiry is that Mr. McGaughy uses his prior inconsistent and unreliable legal standard of what is or what is not a "related document" to exclude all documents except for the Power Contract from his inquiry. Exhibit B at 50.

Q: And you've already said that in this instance, the only document that was available as the contract or related documents was the contract itself? That was your working conclusion?

A: Yes.

Exhibit B at 66.

Because Mr. McGaughy's opinions fail to articulate a precise and specific standard as to which items claimed are "readily ascertainable or easily determined," and also because he erroneously applies his own legal standard of what constitutes a "related document" to his analysis of "ready ascertainment and easy determination," those portions of his opinions should be excluded. *See Frazier*, 387 F.3d at 1266.

B. Mr. McGaughy's Opinions on "Readily Ascertainable or Easily Determined" Are Not a Matter of Expertise

Furthermore, Mr. McGaughy's testimony verifies that the technique he employed in determining whether an item of nuclear fuel or capital addition was "readily identifiable" or "easily determined" was simply to compare the power supply contract and the particular capital projects in question. Exhibit B 49, 51.

> Q: … What was your working definition of "readily ascertainable?" When you have this contract and this item of work, how do you know whether they have that relationship of ready ascertainment or not?
>
> A: Okay. I would look at this contract, and I'd say does it say they should have 56 fuel assemblies to install in 1990, and it doesn't say that.
>
> Q: And you do that with each of the items of work?
>
> A: That's correct.
>
> Q. And for "easy determination," that is in order to determine whether there was an easy determination from the contract of the item of work, you do the same thing in that, the same comparison?
>
> A: Yes.
>
> …
>
> Q: So all of your work in answering those two questions about readily ascertainable and so on was a matter of looking in the contract to see whether there was a specific reference to the item of work that was claimed for which the credit was claimed?
>
> A: That's correct.

Exhibit B at 65-66. This is not a matter of expertise. *Cf.*, *Frazier*, 387 F.3d at 1262 ("expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person").

Mr. McGaughy's comparisons do not employ any expertise that "results from a process of reasoning which can be mastered only by specialists in the field." *Cuyahoga Metro. Housing Auth. v. United States*, 60 Fed. Cl. 481, 483 (2004) (quoting Advisory Committee's Notes accompanying Fed. R. Evid. 701).

> Q: One thing you were doing was assessing whether there was the requisite relationship between the power supply contract and the items of work for which Connecticut Yankee was claiming the credit?
>
> A: That's correct.
>
> Q: In your assessment of the presence or absence of that relationship, the factors that you just described based on your own expertise did not come into play; correct?
>
> A: That's correct, I guess.

Exhibit B at 59.

Opinions which "a non-expert could obtain and comment upon" are not appropriate for expert testimony. *Indiana Michigan Power Co.*, 60 Fed. Cl. 639, 647. "Expert testimony is not helpful if it draws inferences or reaches conclusions within [the trier of fact's] competence or within an exclusive function of the [trier of fact.]" *Westfed Holdings Inc. v. United States*, 55 Fed. Cl. 544, 574 (quoting *Nichols v. American Nat'l ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998) (internal quotations omitted)).

Further, Mr. McGaughy's opinion goes as far as to say, "It seems clear that the work required in '87 through '90 was not readily ascertainable on December 31, 1985,

from the power supply contract or *from any other 1985 documents related or non-related*." Exhibit A at 4. This opinion, too, is unreliable and not based on Mr. McGaughy's expertise.

Q: Now what that sentence states is that the ready ascertainment relationship does not obtain between items of work and certain categories of documents, right?

A: It does.

. . .

Q: Tell me what is the justification for that statement earlier in the paragraph.

A: Well, it refers you to Exhibit 6… .

Exhibit B at 60-61. "Exhibit 6," to which Mr. McGaughy refers, is Connecticut Yankee's "1985 – 1990 Directors Approved Contraction Program versus 1986 – 1991 Construction Program." McGaughy Report at Exhibit 6. In comparison, to arrive at the conclusion that no items of work were ascertainable from "related or non-related" documents, a person with Mr. McGaughy's expertise could have been able to refer to Appendix R to 10 C.F.R. 50 (the regulations promulgated by the NRC to redress problems identified in the Three Mile Island incident) or NRC inspection reports of the Connecticut Yankee plant, along with the state of the power plant certain points in time, to infer what kinds of work items would be required to comply with the requirements set out in Appendix R or the NRC inspection reports. *See, e.g.*, Exhibit C at 193-194, 196, 198-199, 200-201, 208-210, 211-212.

But Mr. McGaughy did not draw from his own expertise. Rather, he merely compared the plain language of the Power Contract to the plain language of the list of

items of work claimed by Connecticut Yankee. Much like the court found in *Indiana Michigan*, "a non-expert could obtain and comment on such." 60 Fel. Cl. at 647.

Because Mr. McGaughy used no expertise to come to his opinion regarding the ready ascertainment or easy determination of Connecticut Yankee's nuclear fuel or capital additions from the power supply contract, his opinion regarding this subject does not aid the Court and should be excluded.

## III. MR. MCGAUGHY'S OPINIONS ON "NECESSARY" ARE PROPER AND SHOULD BE ALLOWED

The only subject of his report on which Mr. McGaughy did rely on his experience and expertise was the subject of the necessity for the work in question, his opinion being that the work was necessary for the operation of the power plant and therefore for the performance of the Power Contract. Exhibit A at 4, 6. Mr. McGaughy states that "There were NRC bulletins and notices, inspection reports and other documents that led to the necessity for some of the projects," Exhibit A at 4, and "The property was probably necessary to operate the plant," Exhibit A at 5. He further states that "Nuclear fuel is certainly necessary to operate the plant and thus supply power." Exhibit A at 6.

It was well within Mr. McGaughy's expertise to examine NRC bulletins and inspection reports supplied by Connecticut Yankee to conclude that such capital additions and nuclear fuel were necessary to carry out the Power Contract. Exhibit A at 1, 4, 5, and 6. Only that opinion should be admitted into evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff Connecticut Yankee respectfully requests that its motion be granted and that the Court exclude the aforementioned portions of Mr. McGaughy's report and any testimony based upon them.

CONNECTICUT YANKEE ATOMIC
POWER COMPANY

By its attorneys,

/s/ Steven A. Kaufman
Steven A. Kaufman
Ropes & Gray LLP
One International Place
Boston, MA 02110
(617) 951-7000
(617) 951-7050 (facsimile)
steven.kaufman@ropesgray.com

Dated: October 20, 2005

Counsel:

J. Steven Baughman
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
(202) 508-4600
(202) 508-4650 (facsimile)
sbaughman@ropesgray.com

A.L. Spitzer
Levina Wong
Ropes & Gray LLP
One International Place
Boston, MA 02110
(617) 951-7000
(617) 951-7050 (facsimile)
lorry.spitzer@ropesgray.com
levina.wong@ropesgray.com